THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Plaintiffs, *v.* PATRICK REILLY and Others, Defendants.

*Corporations — contract by the commissioner of public works in New York city — notice thereunder — when highly penal, the contract will be strictly construed.*

The commissioner of public works of the city of New York awarded a sewer contract to one Reilly, dated the 21st day of November, 1883, and on December fourth an inspector was appointed and went on the work. The contract was highly penal, giving the commissioner power for unnecessary delay to stop the work, complete it by others, and charge the contractor with any excess of cost. It further provided that the contractor should commence the work " on such day, and at such place or places, as the said commissioner may designate, and progress therewith, so as to complete the same in accordance with this agreement, on or before the expiration of twenty-three days thereafter." The commissioner never made this designation and the contractor proceeded voluntarily.

In an action upon a bond, given by the contractor and certain sureties for the faithful performance of the contract:

*Held*, that as the contractor had never been set in motion by an official designation of the time when the work should commence, he was not in default " for unnecessary delay," and the commissioner had no right to abrogate the contract.

A part of the work was mason work, as to which the contract provided that " mason-work of all kinds shall cease on the first day of December in each year, unless the commissioner of public works shall otherwise direct by written notice."

*Held*, that there could be, after December first, no question of " unnecessary delay " as to the mason-work where there was neither a designation of a time at which to commence work, nor any notice in writing authorizing the mason work to continue after that date.

The contract provided that in case the work was taken from the contractor and relet, and its cost proved to be in excess of the original bid, then the contractor must pay " on notice from the commissioner (the amount) of the excess so due."

*Held*, that the fact that no such notice was given was a defense to an action brought to recover such excess.

Exceptions ordered to be heard in the first instance at the General Term, after a trial at the New York Circuit on the 21st day of April, 1890, at which a verdict in favor of the plaintiffs for $2,000 was directed by the court, which further ordered that judgment on the verdict be suspended, pending the decision at General Term.

The action was brought to enforce the provisions of a contract for the construction of a sewer in the city of New York, dated

November 21, 1883. Under this contract an inspector of the work was appointed December 4, 1883, and on that day went on the work.

*John J. Townsend* and *W. H. Clark*, corporation counsel, for the plaintiffs.

*L. Laflin Kellogg*, for defendant Kelly.

*Arthur H. Smith*, for defendant Reilly.

*Joseph Fettretch*, for defendant Williams.

BARRETT, J.:

This action is upon a bond to the plaintiffs, given by all the defendants, to secure the faithful performance by Reilly of a sewer contract awarded to him by the Commissioner of Public Works and executed contemporaneously with such bond. It will not be necessary to consider all the exceptions, as there are one or two which we think fatal to a recovery. It was provided in the contract that Reilly should commence the specified work " on such day and at such place or places as the said Commissioner (of public works) may designate, and progress therewith so as to complete the same, in accordance with this agreement, on or before the expiration of *twenty-three days thereafter.*" The Commissioner never made the designation authorized by this clause, but Reilly commenced work without it. This was all very well so long as matters proceeded satisfactorily, but when the Commissioner became dissatisfied with Reilly's progress and sought to abrogate the contract because of what he deemed " unnecessary delay," he was bound to set the twenty-three days running. He could not charge the contractor with unnecessary or any delay until he had, at least, fixed the time and place for the commencement of the work. That Reilly voluntarily proceeded is immaterial. It was not the delay incident to voluntary action which was contemplated, but delay when there was *an obligation* to proceed. If, for instance, the time of commencing work had been specified in the contract, the contractor, might have forestalled that time, but he would not have been bound to do so ; nor could he have been charged with neglect because he failed to utilize all the intervening time. His contract obligation to commence work at the specified date would govern, and he could not well be dere-

lict until then. The same principle applies where the time of commencing is to be fixed by a particular official. *The duty* to proceed arises only when the official has acted. Then, too, it must not be overlooked that the contract is highly penal and confers almost arbitrary power upon the Commissioner. It provides that "if at any time the said Commissioner *shall be of opinion, and shall so certify* in writing, that the said work, or any part thereof, is unnecessarily delayed   *   *   *   he shall have the power to notify the aforesaid contractor *to discontinue all work, or any part thereof,* under this contract." Upon this notice being given the contractor "shall discontinue said work, or such part thereof," and the Commissioner is then authorized to complete it, by contract or otherwise; and in case the expense shall exceed the sum which would have been payable under the contract to charge the excess to the contractor, who agrees to pay it on notice from the Commissioner of the excess so due.

It is but reasonable that before the Commissioner acts under these extreme provisions the strict letter of the contract with regard to the time of commencing the work should be observed. The contractor's rights cannot be taken away by the mere opinion of the Commissioner until there is, at least, a precise legal basis for its exercise. There is another consideration which strengthens this construction. The contract provides that "mason work of all kinds shall cease on the first day of December in each year, unless the Commissioner of Public Works shall otherwise direct by written notice, and then shall be continued only for such time as may be designated in such notice, and no work shall be resumed before the time appointed by said Commissioner." How can any contractor whose contract calls for mason work be charged with delay, occurring after the first of December, so long as he has received no such written direction to proceed ? A designation under the contract of the time to commence work (involving mason work), given after the first of December, might possibly be treated as equivalent to a written direction to proceed with *all the work* called for by the contract, although, where there is other than mason work to be done, that is extremely doubtful. Without such a designation, however, there can surely be no question of unnecessary delay (after the first of December) with regard to mason work called

for by the contract, but not specially directed in writing to be done. Here the contractor neither received notice to commence work at a particular time nor a notice authorizing the mason work. Assuming, then, that the Commissioner substantially complied with the statute requiring his certificate of unnecessary delay, we think he was not authorized to abrogate the contract in the manner he did, under the then existing circumstances.

The failure of the Commissioner to give Reilly notice of the sum which he was required to pay was also ground for a nonsuit. The agreement was to pay "on notice from the Commissioner of the excess so due." Notice from some one else was not the condition. It must be remembered that this was not an ordinary promise to pay money acknowledged to be due, but, in substance, damages for the breach of a contract, such damages to be liquidated in a particular way. One claiming a sum so brought about should be held to strict compliance with every prerequisite to payment, especially in an action against sureties.

The exceptions should, therefore, be sustained and a new trial ordered, with costs to abide the event.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Exceptions sustained and a new trial ordered, with costs to abide the event.